FIRST TRUST COMPANY OF OMAHA, APPELLANT, V. GLENDALE
REALTY COMPANY ET AL., APPELLEES.

FILED SEPTEMBER 22, 1933. No. 28585.

*Finlayson, Burke & McKie,* for appellant.

*Harry Silverman, Shotwell, Monsky, Grodinsky & Vance,
G. F. Nye, A. H. Murdock* and *Eugene N. Blazer, contra.*

Heard before GOSS, C. J., GOOD, EBERLY and PAINE, JJ.,
and CHASE, LOVEL S. HASTINGS and TEWELL, District
Judges.

EBERLY, J.

This is an appeal from a final order of the district court
for Douglas county denying an application for a deficiency

(283)

judgment against Abe Levey. It was filed in this court on August 18, 1932.

The record discloses that Joe Lapidus and Abe Levey were equal owners of the capital stock of the Glendale Realty Company, a corporation. On July 8, 1925, a loan was obtained from the First Trust Company of Omaha, Nebraska, on certain real estate, the title to which was then in the Glendale Realty Company. This loan was secured by a mortgage executed by that corporation and evidenced by "First mortgage real estate bonds" (or promissory notes) executed likewise by the Glendale Realty Company as a corporation, and to which the individual names of Joe Lapidus and Abe Levey were affixed. It was stipulated at the trial "that the signatures of Abe Levey and Joe Lapidus were placed on said instruments as additional security for the making of said loan."

On December 28, 1925, by a written contract, Abe Levey sold and transferred all his stock in the Glendale Realty Company to Joe Lapidus, who assumed the payments not then matured, secured by the mortgage here in suit, and agreed to "hold second party (Levey) harmless from any and all liability that may ever arise on account of the mortgage and notes heretofore referred to." This mortgage contained a clause empowering the mortgagee, at its option, upon default in payment of principal, interest or taxes, to proceed to foreclose for the entire amount secured.

It appears that the taxes assessed in 1925 and for subsequent years were not paid by Lapidus or the Glendale Realty Company, and that interest and principal notes maturing January 1, 1930, and July 1, 1930, were not paid, and that the suit to foreclose the mortgage was commenced September 2, 1930. A decree of foreclosure and sale was entered in the proceeding on June 2, 1931. A public sale of the mortgaged premises, made pursuant thereto on April 19, 1932, was confirmed on April 30, 1932. The application of the proceeds of sale to the amount due upon the decree left unpaid the sum of $1,153.79, together with interest and costs. A motion for a deficiency judgment for

this amount was filed by the First Trust Company of Omaha on May 12, 1932. The answer and objections to the motion for deficiency judgment presented the defenses of "negligence, delay, laches and lack of diligence," and further charged, in substance, the making of a contract or agreement between the First Trust Company of Omaha and Abe Levey, whereby the former had agreed, shortly after the making of the contract of December 28, 1925, and with full knowledge of the terms thereof, that it would promptly notify Levey of any default occurring in the performance of the mortgage contract; that Levey had relied on the promise, which the trust company had wholly failed to comply with; that more than $5,000 of unpaid taxes had been allowed to accumulate on the mortgaged property, in addition to unpaid instalments of interest and principal; that Joe Lapidus, who until after 1930 was in possession of ample property through which the performance of his agreement could have been enforced, was now wholly insolvent and a bankrupt; and that because of the failure of the trust company to comply with the agreement, and the substantial injustice occasioned thereby to Levey, it was now estopped to maintain its action for a deficiency against that defendant.

The facts thus alleged, if established by competent proof, would apparently, in connection with the claim of equitable estoppel, invoke consideration of the principle of law that "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, Contracts, sec. 90.

It is obvious that the agreement on the part of the First Trust Company to promptly notify the defendant Levey of any default in carrying out the mortgage contract by the Glendale Realty Company, if made, is vital to the defense to the application for a deficiency judgment. With this alleged agreement eliminated, and the situation pre-

sented by the present record considered even wholly apart from the provisions of the Nebraska negotiable instruments law, the controlling principles would be:

"One who signs a note as surety is liable for the payment thereof precisely to the same extent as his principal." *Kroncke v. Madsen,* 56 Neb. 609.

And, "The mere voluntary forbearance on the part of the creditor, enlarging the time of payment, without consideration, or the mere failure to institute an action against the principal when the debt becomes due, will not alone discharge the surety." *Smith v. Mason,* 44 Neb. 610.

"This is true although by lapse of time remedies may be lost against the principal." *Eickhoff v. Eikenbary,* 52 Neb. 332.

See, also, *Bell v. Walker,* 54 Neb. 222; *Bank of Maywood v. Estate of McAllister,* 56 Neb. 188; *Clark v. Douglas,* 58 Neb. 571.

From the brief of the appellees, we infer that the evidence of this agreement relied upon is contained in an affidavit filed in the district court for Douglas county on May 17, 1932, which, in the form of "additional transcript," was filed in this cause by permission of this court. Assuming, but not determining, the competency of the proof, this instrument, though thereby made a part of the transcript, was not thereby made a part of the bill of exceptions as allowed by the trial judge. At no place in the bill of exceptions filed in this case does it appear that this affidavit, or the evidence contained therein, was offered or received as proof on the hearing of this cause in the district court. The certificate of the trial judge, attached to the present bill of exceptions, imports absolute verity, and its truthfulness may not be assailed collaterally. *Gregory v. Kaar,* 36 Neb. 533; *Phoenix Ins. Co. v. Howe,* 2 Neb. (Unof.) 20. In this state of the record, manifestly the affidavit under consideration, not being embodied in the bill of exceptions as allowed by the trial court, may not be considered here. *Kyle v. Chase,* 14 Neb. 528; *Burke v. Pepper,* 29 Neb. 320; *McCarn v. Cooley,* 30 Neb. 552;

*Morsch v. Besack,* 52 Neb. 502; *Hartford Fire Ins. Co. v. Corey,* 53 Neb. 209; *Thies v. Thies,* 103 Neb. 499; *Shaw v. Diers Bros. & Co.,* 124 Neb. 119.

It also follows that under the statutes in force on the 12th day of May, 1932, under the facts then before the district court as the same appear in the bill of exceptions, plaintiff was entitled to a deficiency judgment as prayed, and error was committed in refusing the same.

Appellees have by a supplemental brief referred to the provisions of House Roll No. 10 relating to deficiency judgments, approved April 26, 1933, as sustaining the action of the trial court in denying the motion for a deficiency. This enactment was not in force when the final order appealed from was entered in this case, nor when the appeal therefrom was filed in this court. Its validity or invalidity, or force and effect, in view of the circumstances of this case, cannot be properly presented in this proceeding at this time to this tribunal acting solely as a court of review. No issues will ordinarily be considered here except such as were involved in the case presented to the trial judge. *Hanscom v. Meyer,* 61 Neb. 798; *Thompson v. West,* 59 Neb. 677; *Patrick v. National Bank of Commerce,* 63 Neb. 200; *Burrows v. Vanderbergh,* 69 Neb. 43; *Rushton v. Dierks Lumber Co.,* 2 Neb. (Unof.) 563; *Merrill v. Miller,* 2 Neb. (Unof.) 630; *Wolff v. Phelps,* 3 Neb. (Unof.) 511.

It follows that the judgment of the district court should be, and is, reversed and the cause remanded for further proceedings, with directions to permit the introduction of further evidence, if either party so elects.

REVERSED.